```
George C. Paine, II
US Bankruptcy Judge
Dated: 11/08/11
```



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: | |
| ANDREW STEPHEN BOURKE, Debtor. | Case Number: 11-05795<br>Chapter 7<br>Hon. George C. Paine, II |
| SOUTHEASTERN FINANCIAL CREDIT UNION<br>Plaintiff | |
| v. | Adversary Number: 11-0409A |
| ANDREW STEPHEN BOURKE<br>Defendant. | |

## MEMORANDUM

Southeastern Financial Credit Union ("SFCU") filed this 11 U.S.C. § 523(a)(2)(B) nondischargeability action against the debtor, Andrew Stephen Bourke ("debtor") alleging that the debtor obtained a loan from SFCU by submitting a materially false financial statement. For the reasons cited more fully herein, the court finds that the debtor's obligation to SFCU is discharged, and this adversary proceeding is dismissed. This constitutes the court's findings of fact and conclusions of law.

The debtor called SFCU on May 24, 2007 and left a message for SFCU loan officer, Bobby Pollack asking if he could obtain a $250,000.00 loan for the purchase of a houseboat. Mrs. Pollack returned the phone call the same day. She testified that she

requested and received a "buyer's order" for the houseboat from the seller.[1] She also took information over the phone from the debtor such as name, address, and phone number while typing it into her computer to fill in a "LoanLiner Application." When asked about his employment and income, the debtor told Mrs. Pollack that he was the CEO of Calcutree Technologies, and that his total annual gross income was $804,000.00. Mrs. Pollack's testimony was that the debtor said he was employed by Calcutree and his total income from Calcutree was $804,000.00. The debtor testified that he understood Mrs. Pollack to ask what his total income was, including his employment income. Under either scenario, Mrs. Pollack completed the application as follows:

| **Employment/Income** | $804,000 | **per** | ANNUALLY | GROSS |
|---|---|---|---|---|
| **Name and Address of Employer:** | CALCUTREE TECHNOLOGIES | | | |
| **Title:** | CEO | **stat date**: | 04/05/2002 | |

There was another question entitled "Other Income" that included $600 per month from "Panorama." The application was printed out based on the information put in by Mrs. Pollack that she says she received from the debtor. The debtor agrees that he provided the information to Mrs. Pollack, and agrees that he told her that his annual income was $804,000.00.[2]

---

[1] Mrs. Pollack insisted that paperwork sent to her was a "Buyer's Order" in her words. However, the exhibit introduced as the buyer's order is self-titled by the plaintiff "Defendant's application to Offshore Marine" and is clearly the debtor's loan application with the seller of the houseboat that was denied.

[2] This was the debtor's fifth loan application with SFCU, with three prior loans being approved and paid off timely, and the fourth the debtor went elsewhere to borrow after completing the application. The debtor believes most if not all his loans were initiated over the telephone in this same manner.

The next morning on May 25, 2007, Mrs. Pollack "pulled" the debtor's credit report. The debtor's credit report showed the following message:

> ***FICO CLASSIC 98 ALERT: Score +666 : SERIOUS DELINQUENCY; LEVEL OF DELINQUENCY ON ACCOUNTS; PROPORTION OF BALANCES TO CREDIT LIMITS IS TOO HIGH ON BANK REVOLVING OR OTHER REVOLVING ACCOUNTS; PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH ***IN ADDITION TO THE FACTORS LISTED ABOVE, THE NUMBER OF INQUIRES ON THE CONSUMER'S CREDIT FILE HAS ADVERSELY AFFECTED THE CREDIT SCORE.[3]

Mrs. Pollack explained that she saw no "red flags" from the credit report and based on SFCU's policies, the debtor was "B grade" and therefore required no further investigation. Mrs. Pollack testified that a $250,000.00 loan was required to be approved by her supervisor, but that neither she nor her supervisor verified the debtor's employment, or the debtor's income or made any further inquiries based on the alerts in the credit report or the information provided by the debtor. The loan was approved by SFCU's CEO, and Mrs. Pollack called the debtor that morning to let him know.

Mrs. Pollack's testimony and the debtor's testimony about when the loan actually closed is inapposite. Mrs. Pollack testified that she remembered the debtor coming into the credit union on May 25 to fill out some marine paperwork related to the houseboat title, and that the closing was set up for May 31, 2007 at 12:00 noon.[4] Mrs. Pollack

---

[3] Mrs. Pollack testified that the delinquency language appears in every credit report. The debtor testified that he used to work in car sales, and he did not remember the delinquency language appearing in all credit reports. The court finds Mrs. Pollack's testimony on this subject disingenuous, and the debtor's testimony is more believable. The Transunion credit report contains an ALERT only when the applicant has an elevated level of adverse payment history or a negative public record or collection on file. This is just one aspect of Mrs. Pollack's testimony that the court found questionable.

[4] Mrs. Pollack also testified that when the debtor came in on the 25th, he requested a lower interest rate. The debtor disputes this, and does not have any memory of a conversation about a lower interest rate. The debtor testified that the first time he saw all the documents, including the loan application and the note was on June 7, 2007. When he arrived all documents were already prepared for signing and he had no opportunity to negotiate a lower interest rate.

testified that the debtor came in on May 31, 2007, and the loan closed on that date.[5]

The debtor testified that he did not come into the credit union at all until Tuesday June 5, 2007. The debtor remembers that he found out the loan was approved on Friday June 1, 2007, but it was too late in the day to wire the money to houseboat seller. The debtor asked Mrs. Pollack to call the houseboat seller to let the seller know the loan was approved and would be funded so that the debtor could take possession of the houseboat Saturday morning and enjoy it that weekend. According to the debtor, Mrs. Pollack made that call, and the debtor took possession of the houseboat on June 2, 2007 at 9:00 a.m., and he and his wife enjoyed a long weekend on the boat.[6] On Tuesday, June 5, 2007, he went to SFCU to close the loan, but at SFCU's request all closing documents were dated May 31, 2007. Under either scenario, the loan was closed at the earliest May 31, 2007 and at the latest, June 5, 2007, and the paperwork shows a May 31, 2007 closing.[7]

The debtor testified that his annual income was $804,000.00 in May 2007 when Mrs. Pollack filled out the application. He explained that he assumed the line on the loan application marked "**Employment/Income**" was his total annual income, not just income from his employment. The debtor testified that his annual income from his employment with Calcutree in 2007 was $154,000 annually. In addition to this, the debtor, at that time,

---

[5] It is troublesome to the court that Mrs. Pollack produced detailed phone logs and calendar entries to support her testimony but did not produce the entire log or any evidence to support her memory that the debtor came in on May 25 to sign certain marine papers.

[6] Mrs. Pollack only produced two of her voice logs, and thus, despite her apparently detailed record keeping, there is no record of this phone call. However, the court just found the debtor's account of the closing more believable.

[7] The loan application, the loan and security agreements, and the wire transfer all bear the May 31, 2007 date, and the handwritten date on all of those documents appear to be written by someone other than the debtor. The debtor first sought a loan from the seller of the houseboat, and the handwritten date on that document is most definitely a different author.

was receiving $600 per month from an entity called Panorama Records, and his investment with an entity called MRT LLC was conservatively generating $54,000 per month in interest which the debtor could access. The $54,000.00 per month in addition to the employment income and Panorama income gave the debtor an overall annual income of $804,000.00.

The debtor made several payments on the houseboat loan but eventually defaulted.[8] In October 2007, the debtor learned that the money he was accruing in his MRT account was the result of a large-scale ponzi scheme. According to the debtor's testimony, a class action lawsuit was filed against the principals of MRT alleging a ponzi scheme; MRT was put into a Florida receivership and the receiver filed suit against the debtor (and all other investors) to recover "false profits" as a result of the ponzi scheme; all online account access to the MRT accounts was terminated; and the debtor lost over $300,000.00 of his own money, not including all of the "profits" which were really someone else's money.

The debtor filed a chapter 7 petition on June 10, 2011. SFCU filed this adversary proceeding on July 18, 2011 alleging that the debt to SFCU was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). SFCU contends that debtor's representation of $804,000.00 in annual income was false and misleading on the loan application, SFCU relied upon that representation, and that SFCU would not have approved the debtor's $250,000.00 houseboat loan had it known that debtor's employment/and or total income was actually closer to $170,000.00.

11 U.S.C. § 523(a)(2)(B) excepts from discharge:

---

[8]SFCU exercised its rights in the collateral after the default, but a deficiency balance remained plus interest and attorney fees.

>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
>    (B) use of a statement in writing–
>
>    (i) that is materially false;
>
>    (ii) respecting the debtor's or an insider's financial condition;
>
>    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
>    (iv) that the debtor caused to be made or published with intent to deceive;

**11 U.S.C. § 523(a)(2)(B).** This section of the Code makes nondischargeable debts incurred by use of a false statement in writing. In order to succeed on this claim, SFCU had to show the following elements regarding the writing: (1) that it was materially false; (2) respecting the debtor's or an insider's financial condition; (3) on which the creditor to whom the debtor was liable for such money, property, services or credit reasonably relied, and (4) the debtor caused to be made or published with the intent to deceive. **In re Martin**, 761 F.2d 1163, 1166 (6th Cir.1985). The creditor must prove the claim by the preponderance of the evidence. **Grogan v. Garner**, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

SFCU cannot prove the first prong. The writing must be materially false. The court found the debtor's testimony was absolutely credible that his annual income was accurately reported to SFCU at the time of the houseboat loan. The debtor agrees that he told SFCU that his annual income was $804,000.00. While there might have been some misunderstanding about the actual breakdown of the $804,000.00, it is clear from the debtor's testimony and his documentary proof that he was earning on an annual basis approximated from his employment income, the Panorama income, and the MRT income

available to him, the $804,000.00 that he reported to SFCU.[9]  Nothing the debtor reported to SFCU was false based on the proof before the court.

Furthermore, even if there was a misunderstanding that the information sought by SFCU was only about the debtor's annual employment income as opposed to his total annual income, the court cannot find that the debtor intended to deceive SFCU.  The Sixth Circuit has found that, "section 523(a)(2)(B)(iv) is met if a debtor is reckless when submitting financial statements that he knows are not true, not only if the debtor possesses a subjective intent to deceive." **Investors Credit Corp. v. Batie (In re Batie)**, 995 F.2d 85, 90 (6th Cir.1993). Courts have recognized that a debtor will rarely admit to acting with such intent; consequently, a creditor can demonstrate the requisite level of intent through circumstantial evidence. **See Clyde–Findlay Area Cr. Union v. Burwell (In re Burwell)**, 276 B.R. 851, 854 (Bankr. N.D. Ohio 2002).

Exceptions to discharge, including the exceptions under § 523(a)(2), "are to be strictly construed against the creditor." **Manufacturer's Hanover Trust v. Ward (In re Ward),** 857 F.2d 1082, 1083 (6th Cir.1988).  SFCU did not prove by the preponderance of the evidence that any of the circumstances surrounding this loan show an intent to deceive by the debtor.  The court found the debtor's testimony credible that he was attempting to be completely forthcoming in the over the phone conversation giving Mrs. Pollack his income.  He explained when he saw and signed the loan application, he assumed that the line reading "**Employment/Income**" meant his annual gross income as $804,000.00, and his employment information.  None of the circumstances surrounding the debtor's loan application indicate an intent to deceive.  Accordingly, the court finds that

---

[9]The debtor testified that he also submitted loan applications to the houesboat seller, and AmSouth Bank, but both entities denied his application.  He reported the same $804,000 in annual income on those loan applications as well.

the debt owed to SFCU is discharged, and SFCU's adversary complaint is hereby DISMISSED.

If the debtor's debt was discharged, the debtor requested attorney fees be paid pursuant to 11 U.S.C. § 523(d):

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances make the award unjust.

**11 U.S.C. § 523(d).** "A creditor's position is substantially justified if it has 'a reasonable basis in both law and in fact'. . . ." **Providian Bancorp v. Stockard (In re Stockard)**, 216 B.R. 237, 240 (Bankr. M.D. Tenn. 1997). Court looks to the totality of the circumstances. **Bank of America v. Miller (In re Miller)**, 250 B.R. 294, 296 (Bankr. E.D.Ky. 2000) (quoting **In re Williams**, 224 B.R. 523, 531 (2d Cir. (BAP) 1998)); **Matter of Phillips**, 153 B.R. 758 (Bankr. E.D.Mich. 1993). The court finds that based on the totality of circumstances, the complaint was not substantially justified. The credit union did not verify the debtor's employment; took the application over the phone; never fully completed the application; did not realize the substantial differentiation in income on this application compared with the four other applications submitted; ignored the ALERTS on his credit report; and did not verify the debtor's income. SFCU seeks to hold the debt nondischargeable when weaknesses in its credit application process caused the confusion. Had SFCU chosen to verify income, SFCU would have learned the basis for debtor's $804,000.00 annual income and made an informed decision as to whether the MRT earnings should be counted as income. The court finds that the fraud allegations were not substantially justified and warrant a § 523(d) finding of costs and attorney fees.

For all the reasons stated above the court orders that: (1) the debtor's debt to SFCU

is DISCHARGED; (2) SFCU's adversary complaint is DISMISSED; and (3) the court GRANTS the debtor's §523(d) request for attorney fees and costs.  Counsel for the debtor shall prepare an order not inconsistent with this court's decision within fourteen (14) days of entry of this Memorandum leaving blank the amount of costs and attorney fees. Simultaneously, debtor's counsel shall submit an affidavit supporting amounts sought pursuant to 11 U.S.C. § 523(d).

This Order has Been electronically signed.  The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.